**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1733
_____


ZACHARY GREENBERG


v.


JERRY M. LEHOCKY, in his official capacity as Board
Chair of the Disciplinary Board of the Supreme Court of
Pennsylvania; DION G. RASSIAS, in his official capacity as
Board Vice-Chair of the Disciplinary Board of the Supreme
Court of Pennsylvania; JOSHUA M. BLOOM, in his official
capacity as Member of the Disciplinary Board of the Supreme
Court of Pennsylvania; CELESTE L. DEE, in her official
capacity as Member of the Disciplinary Board of the Supreme
Court of Pennsylvania; LAURA E. ELLSWORTH, in her
official capacity as Member of the Disciplinary Board of the
Supreme Court of Pennsylvania; CHRISTOPHER M.
MILLER, in his official capacity as Member of the
Disciplinary Board of the Supreme Court of Pennsylvania;
ROBERT J. MONGELUZZI, in his official capacity as
Member of the Disciplinary Board of the Supreme Court of
Pennsylvania; GRETCHEN A. MUNDORFF, in her official
capacity as Member of the Disciplinary Board of the Supreme
Court of Pennsylvania; JOHN C. RAFFERTY, JR., in his

official capacity as Member of the Disciplinary Board of the Supreme Court of Pennsylvania; HON. ROBERT L. REPARD, in his official capacity as Member of the Disciplinary Board of the Supreme Court of Pennsylvania; DAVID S. SENOFF, in his official capacity as Member of the Disciplinary Board of the Supreme Court of Pennsylvania; SHOHIN H. VANCE, in his official capacity as Member of the Disciplinary Board of the Supreme Court of Pennsylvania; THOMAS J. FARRELL, in his official capacity as Chief Disciplinary Counsel of the Office of Disciplinary Counsel; RAYMOND S. WIERCISZEWSKI, in his official capacity as Deputy Chief Disciplinary Counsel of the Office of Disciplinary Counsel,

                                    *Appellants*

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Criminal No. 2-20-cv-03822
(District Judge: Honorable Chad F. Kenney)
_____

ARGUED: April 13, 2023

Before: CHAGARES, *Chief* Judge, SCIRICA, and AMBRO, *Circuit Judges*.

(Filed: August 29, 2023)

Lisa S. Blatt [**ARGUED**]
Aaron Z. Roper
Amy M. Saharia

Peter Jorgensen
Williams & Connolly
680 Maine Avenue SW
Washington, DC 20024
    *Counsel for Appellants*

Omar Gonzalez-Pagan
Ethan Rice
Lambda Legal
120 Wall Street
19th Floor
New York, NY 10005

Karen Loewy
Lambda Legal
1776 K Street NW
7th Floor
Washington, DC 20006
    *Counsel for Amicus Appellant Lambda Legal Defense &
Education Fund Inc.*

Abraham C. Reich
Robert S. Tintner
Beth L. Weisser
Fox Rothschild
2000 Market Street
20th Floor
Philadelphia, PA 19103
    *Counsel for Amicus Appellant American Bar Association*

Carmen G. Iguina Gonzalez
Joshua A. Matz

Raymond P. Tolentino
Kaplan Hecker & Fink
1050 K Street NW
Suite 1040
Washington, DC 20001
    *Counsel for Amicus Appellants Stephen Gillers and Barbara S. Gillers*

Joshua J.T. Byrne
Marshall Dennehey Warner Coleman & Goggin
2000 Market Street
Suite 2300
Philadelphia, PA 19103
    *Counsel for Amicus Appellants Rebecca Aviel, Myles V. Lynk and Ann Ching*

Brittany C. Armour
Hogan Lovells US
1735 Market Street
23rd Floor
Philadelphia, PA 19103

German A. Gomez
Hogan Lovells US
555 Thirteenth Street NW
Columbia Square
Washington, DC 20004
    *Counsel for Amicus Appellants Hispanic National Bar Association, National Asian Pacific American Bar Association, Asian Pacific American Bar Association of Pennsylvania, National Bar Association, National Native American Bar Association, National LGBTQ+ & Bar Association, and National Association of Women Lawyers*

Thomas G. Wilkinson, Jr.
Cozen O'Connor
1650 Market Street
One Liberty Place, Suite 2800
Philadelphia, PA 19103
    *Counsel for Amicus Appellants Pennsylvania Bar
Association, Philadelphia Bar Association, Allegheny Bar
Association, and Interbranch Commission for Racial Gender
and Ethnic Fairness*

Theodore H. Frank
Adam E. Schulman [**ARGUED**]
Hamilton Lincoln Law Institute
1629 K Street NW
Suite 300
Washington, DC 20006
    *Counsel for Appellee*

Ilya Shapiro
Manhattan Institute
52 Vanderbilt Avenue
New York, NY 10017
    *Counsel for Amicus Appellee Manhattan Institute, Bader
Family Foundation, Hans Bader*

Eugene Volokh
UCLA School of Law
385 Charles E. Young Drive
Los Angeles, CA 90095
    *Counsel for Amicus Appellee Women's Liberation Front,
Concerned Woman for America*

Richard A. Samp
New Civil Liberties Alliance
1225 19th Street NW
Suite 450
Washington, DC 20036
    *Counsel for Amicus Appellee New Civil Liberties Alliance*

John J. Bursch
Alliance Defending Freedom
440 First Street NW
Suite 600
Washington, DC 20001

Jacob P. Warner
Alliance Defending Freedom
15100 N 90th Street
Scottsdale, AZ 85260
    *Counsel for Amicus Appellee Alliance Defending Freedom*

Randall L. Wenger
Independence Law Center
23 N Front Street
Harrisburg, PA 17101
    *Counsel for Amicus Appellees Independence Law Center and First Liberty Institute*

L. Theodore Hoppe
Suite 215
25 W. Second Street
Second Flr.
Media, PA 19063
    *Counsel for Amicus Appellee Christian Legal Society*

Reilly Stephens
Liberty Justice Center
440 N Wells Street
Suite 200
Chicago, IL 60654

Daniel R. Suhr
National Center for Justice & Liberty
747 N Jackson Street
Suite 210
Chicago, IL 60654
    *Counsel for Amicus Appellees Bruce A. Green and Rebecca Roiphe*

Deborah J. Dewart
111 Magnolia Lane
Hubert, NC 28539
    *Counsel for Amicus Appellee Institute for Faith and Family*

Ethan Blevins
Pacific Legal Foundation
555 Capitol Mall
Suite 1290
Sacramento, CA 95814
    *Counsel for Amicus Appellee Pacific Legal Foundation*

Johanna E. Markind
#280
18 Maple Avenue
Barrington, RI 02806
    *Counsel for Amicus Appellee Legal Insurrection Foundation*

Steven W. Fitschen
National Legal Foundation
524 Johnstown Road
Chesapeake, VA 23322
    *Counsel for Amicus Appellees National Legal Foundation,
Pacific Justice Institute, and Justice & Freedom Law Center*

Larry L. Crain
Crain Law Group
5214 Maryland Way
Suite 402
Brentwood, TN 37027
    *Counsel for Amicus Appellee Patrick G. Gould*

_____

OPINION OF THE COURT
_____

**SCIRICA**, *Circuit Judge*.

The Supreme Court of Pennsylvania amended Pennsylvania Rule of Professional Conduct 8.4 to prohibit harassment and discrimination in the practice of law. Plaintiff Zachary Greenberg is a Pennsylvania-licensed attorney who regularly gives continuing legal education presentations about First Amendment protections for offensive speech. His presentations involve quoting offensive language from judicial opinions and discussing arguably controversial topics. Greenberg fears his speech at these presentations will be interpreted as harassment or discrimination under the Rule. He alleges the Rule violates the First Amendment and is unconstitutionally vague. The District Court agreed with him

and enjoined enforcement of the Rule.

We determine Greenberg lacks standing to bring his challenge. Rule 8.4(g) does not generally prohibit him from quoting offensive words or expressing controversial ideas, nor will Defendants impose discipline for his planned speech. Thus, any chill to his speech is not objectively reasonable or cannot be fairly traced to the Rule. We will reverse.

I.

The Pennsylvania Constitution vests the Pennsylvania Supreme Court with the power to regulate the practice of law in the Commonwealth. Pa. Const. art. V, § 10(c). To carry out this responsibility, the Pennsylvania Supreme Court enacts the Pennsylvania Rules of Professional Conduct for all attorneys licensed in the jurisdiction and empowers the Disciplinary Board of the Supreme Court of Pennsylvania to regulate the conduct of Pennsylvania attorneys according to those Rules.

Anyone may file a complaint against a Pennsylvania-licensed attorney for violating the Rules of Professional Conduct. Within the Disciplinary Board, the Office of Disciplinary Counsel investigates such complaints. If the Office of Disciplinary Counsel determines a complaint is frivolous or that policy or prosecutorial discretion warrants dismissal, it may dismiss the complaint without requesting a response from the attorney. From 2016–2018, the Office of Disciplinary Counsel dismissed 87% of complaints without requesting a response from an attorney. If an investigation finds that attorney discipline may be appropriate, the recommendation is reviewed by the Chief Disciplinary Counsel. The Chief Disciplinary Counsel directs the Office of

Disciplinary Counsel's interpretation of the Rules of Professional Conduct and must grant express approval for any disciplinary recommendation. Depending on the disposition and severity of the reprimand, the Office of Disciplinary Counsel's disciplinary recommendations may proceed to a hearing, with de novo review by the Disciplinary Board and ultimately the Pennsylvania Supreme Court. Generally, investigations into attorney discipline are kept confidential and details are only made public after the Board pursues discipline. Pa. Disciplinary Bd. R. 93.102 (2022); Pa. R. Disciplinary Enf't 402(a) (2022).

The regulation of harassment or discrimination by attorneys has evolved over the decades. In 1983, the American Bar Association (ABA) first adopted the Model Rules of Professional Conduct. These rules are not binding on attorneys but serve as a model for states to form their own rules of conduct.

Model Rule 8.4 specifies, among other things, that it is "professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice." Model Rules of Pro. Conduct r. 8.4(d) (Am. Bar Ass'n 2016). In 1998, the ABA adopted a comment to Model Rule 8.4 clarifying that it was professional misconduct for an attorney to "knowingly manifest[] by words or conduct, bias or prejudice" based on certain protected characteristics.[1] Model Rules of Pro. Conduct r. 8.4 cmt. 2 (Am. Bar Ass'n 1998). But the scope of that

---

[1] Those characteristics include "race, sex, religion, national origin, disability, age, sexual orientation, [and] socioeconomic status." Model Rules of Pro. Conduct r. 8.4 cmt. 2 (Am. Bar Ass'n 1998).

comment was limited to words or conduct "in the course of representing a client" that "are prejudicial to the administration of justice." *Id.*

In 2014, to advance its goal of eliminating bias in the legal profession, the ABA began considering amending Model Rule 8.4 to "reflect the changes in law and practice since 1998." JA249. The result two years later was the adoption of Model Rule 8.4(g), which added specific antiharassment and antidiscrimination provisions within the black letter of the rule—not the commentary. Model Rule 8.4(g) also expanded the scope of the 1998 comment from conduct "in the course of representing a client" to "conduct related to the practice of law." Model Rules of Pro. Conduct r. 8.4(g) (Am. Bar Ass'n 2016). The ABA reasoned the Model Rule should prohibit harassment and discrimination beyond the scope of representing a client—such as "bar association functions" or "law firm social events." ABA Comm. on Ethics & Pro. Resp., Formal Op. 493, at 4 (2020). Model Rule 8.4(g) currently prohibits "harassment or discrimination" based on certain protected characteristics[2] "related to the practice of law." Model Rules of Pro. Conduct r. 8.4(g) (Am. Bar Ass'n 2016).

Consistent with the ABA's goal of eliminating bias in the legal profession, many states have adopted their own provisions prohibiting some form of attorney bias, prejudice, harassment, or discrimination. Forty-four jurisdictions' rules of professional conduct, either directly or through

---

[2] Those protected characteristics are race, sex, religion, national origin, ethnicity, disability, age, sexual orientation, gender identity, marital status, and socioeconomic status. Model Rules of Pro. Conduct r. 8.4(g) (Am. Bar Ass'n 2016).

11

commentary, regulate verbal manifestations of bias, prejudice, harassment, or discrimination. Thirteen jurisdictions (other than Pennsylvania) regulate verbal bias, prejudice, harassment, or discrimination by attorneys outside client representation or operation of a law practice.

Historically, Pennsylvania has supported adoption of the ABA Model Rules in its Rules of Professional Conduct to "promote consistency in application and interpretation of the rules from jurisdiction to jurisdiction." 46 Pa. Bull. 7519 (Dec. 3, 2016). Thus, Pennsylvania considered its own amendment conforming to Model Rule 8.4(g) in 2016. *Id.* That fall, the Pennsylvania Bar Association House of Delegates approved a recommendation that the Supreme Court of Pennsylvania adopt an antiharassment and antidiscrimination rule of professional conduct. After over two years of "deliberation, discussion, and extensive study," the Disciplinary Board recommended a proposed amendment to Pennsylvania Rule of Professional Conduct 8.4. 49 Pa. Bull. 4941 (Aug. 31, 2019). The Board emphasized that the "proposed rule promotes the profession's goal of eliminating intentional harassment and discrimination, assures that the legal profession functions for all participants, and affirms that no lawyer is immune from the reach of law and ethics." *Id.*

The Pennsylvania Supreme Court adopted the proposed recommendation in 2020. It enacted Pennsylvania Rule of Professional Conduct 8.4(g), which provided that it is professional misconduct for a lawyer to, "in the practice of law, by words or conduct, knowingly manifest bias or prejudice, or engage in harassment or discrimination, as those terms are defined in applicable federal, state or local statutes or ordinances, including but not limited to bias, prejudice,

harassment or discrimination based upon" eleven protected grounds.[3] 50 Pa. Bull. 3011 (June 20, 2020). The Pennsylvania Supreme Court also added two comments to the Rule. Comment 3 clarified that "the practice of law" includes "continuing legal education seminars, bench bar conferences and bar association activities where legal education credits are offered." *Id.* Comment 4 explained that prohibited conduct would be defined by substantive antidiscrimination and antiharassment statutes and case law. *Id.*

Before the amendment was scheduled to take effect, Plaintiff Zachary Greenberg sued members of the Disciplinary Board of the Pennsylvania Supreme Court as well as the Board's Chief and Deputy Chief Disciplinary Counsel. Greenberg is a Pennsylvania-licensed attorney who regularly presents continuing legal education ("CLE") seminars about the First Amendment. He also speaks at non-CLE seminars about First Amendment rights related to university policies banning hate speech, due process protections for students accused of sexual misconduct, religious speech that espouses discriminatory views, and political speech through campaign contributions. Greenberg believes some audience members will find his presentations—which include quotations of racial epithets from judicial opinions and are inclined towards arguably controversial positions—to be "biased, prejudiced, offensive, and potentially hateful." Compl. ¶¶ 63–64, *Greenberg v. Haggerty*, No. 20-cv-3822 (E.D. Pa. Aug. 6, 2020), ECF No. 1. As a result, he fears they will file a bar

---

[3] The protected grounds are "race, sex, gender identity or expression, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, [and] socioeconomic status." 50 Pa. Bull. 3011 (June 20, 2020).

disciplinary complaint against him. He plans to continue speaking at CLE events on these topics, but alleges "the existence of Rule 8.4(g) and the uncertainty surrounding the scope of Rule 8.4(g) [would] chill his speech" and cause him to alter his lectures. *Id.* ¶¶ 60, 65. He claimed Pennsylvania's Rule 8.4(g), as adopted in 2020, violated the First Amendment and was unconstitutionally vague.

Greenberg sought a declaratory judgment that the Rule was unconstitutional and an injunction prohibiting its enforcement. He then moved to preliminarily enjoin Defendants from enforcing any part of Rule 8.4(g). Defendants moved to dismiss the suit, arguing that Greenberg lacked standing and that the Rule did not violate either the First or Fourteenth Amendment.

The District Court denied Defendants' motion to dismiss and preliminarily enjoined enforcement of Rule 8.4(g) in its entirety. It held that Greenberg had standing: His plan to "repeat[] slurs or epithets" or "engag[e] in discussion with his audience members about the constitutional rights of those who do and say offensive things" was "arguably proscribed by Rule 8.4(g)," and he faced a "credible threat of prosecution" because he "demonstrated that there is a substantial risk that [Rule 8.4(g)] will result in [his] being subjected to a disciplinary complaint or investigation." *Greenberg v. Haggerty*, 491 F. Supp. 3d 12, 24 (E.D. Pa. 2020). Thus, the District Court determined Greenberg's allegation that his speech was chilled was objectively reasonable. Ultimately, the trial court found it persuasive that Defendants offered no guarantee they would not "discipline his offensive speech even though they have given themselves the authority to do so." *Id.*

14

Defendants first sought interlocutory review but later voluntarily dismissed their appeal and instead amended Rule 8.4(g). That amendment produced the current form of Rule 8.4(g) and commentary, the relevant portions of which follow:

It is professional misconduct for a lawyer to . . .

(g) in the practice of law, knowingly engage in conduct constituting harassment or discrimination based upon race, sex, gender identity or expression, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, or socioeconomic status. . . .

Comment [3]: For the purposes of paragraph (g), conduct in the practice of law includes (1) interacting with witnesses, coworkers, court personnel, lawyers, or others, while appearing in proceedings before a tribunal or in connection with the representation of a client; (2) operating or managing a law firm or law practice; or (3) participation in judicial boards[,] conferences, or committees; continuing legal education seminars; bench bar conferences; and bar association activities where legal education credits are offered. The term "the practice of law" does not include speeches, communications, debates, presentations, or publications given or published outside the contexts described in (1)–(3).

Comment [4]: "Harassment" means conduct that is intended to intimidate, denigrate or show

15

hostility or aversion toward a person on any of the bases listed in paragraph (g). "Harassment" includes sexual harassment, which includes but is not limited to sexual advances, requests for sexual favors, and other conduct of a sexual nature that is unwelcome.

Comment [5]: "Discrimination" means conduct that a lawyer knows manifests an intention: to treat a person as inferior based on one or more of the characteristics listed in paragraph (g); to disregard relevant considerations of individual characteristics or merit because of one or more of the listed characteristics; or to cause or attempt to cause interference with the fair administration of justice based on one or more of the listed characteristics.

JA206–07 ¶¶ 57–60 (Pa. R. Pro. Conduct 8.4(g) & cmts. 3–5).

Defendants agreed not to enforce the Rule until the trial court decided Greenberg's challenge. Greenberg then filed an amended complaint challenging the amended Rule 8.4(g). In that complaint, he committed to continue speaking at CLE and non-CLE events. But he reaffirmed his belief "that every one of his speaking engagements on First Amendment issues carries the risk that an audience member will file a bar disciplinary complaint against him based on the content of his presentation under Rule 8.4(g)." JA162 ¶ 102. Thus, he explained his intention to "refrain from speaking engagements on controversial issues" and to alter his presentations to "reduce the risk of an audience member reporting his expression." *Id.* ¶¶ 103–04. He expressed ongoing concern that

16

a "disciplinary investigation would harm [his] professional reputation, available job opportunities, and speaking opportunities." *Id.* ¶ 108.

Both sides moved for summary judgment. In support of their motion, Defendants submitted a declaration from Defendant Thomas Farrell, Pennsylvania's Chief Disciplinary Counsel. In that role, Farrell has authority to direct and determine the Office of Disciplinary Counsel's policy on handling complaints raising First Amendment issues. Farrell stated that the Office of Disciplinary Counsel "interprets Rule 8.4(g) as encompassing only conduct which targets individuals by harassing or discriminating against an identifiable person," and "does not interpret Rule 8.4(g) as prohibiting general discussions of case law or 'controversial' positions or ideas." JA276 ¶ 7. Farrell stated that Greenberg's planned presentations, speeches, and writings do not violate Rule 8.4(g) and that the Office of Disciplinary Counsel would not pursue discipline because of them. JA276–78 ¶¶ 8–17; *see* JA287–88 (any complaint based on the conduct described in Greenberg's complaint would be "frivolous"). Defendants argued that Greenberg lacked standing to challenge the current form of Rule 8.4(g). In response, Greenberg argued that the recent amendments to the Rule and Farrell's declaration—which arose after the commencement of litigation—concerned mootness rather than standing.

The District Court granted Greenberg's motion for summary judgment and denied Defendants' motion for summary judgment. It held the recent amendments to the Rule and the Farrell Declaration did "not affect [its] prior decision on standing in the least" and found no "compelling reason to revoke its prior ruling on standing." *Greenberg v. Goodrich*,

17

593 F. Supp. 3d 174, 189 (E.D. Pa. 2022). It determined the amendments to the Rule and the Farrell Declaration were relevant only to mootness—not standing—because they arose after the commencement of litigation. It held the amendments and Farrell Declaration did not moot the case. On the merits, the trial court determined Rule 8.4(g) violated the First Amendment on several bases and was unconstitutionally vague. *Id.* at 206–20, 222–25 Thus, it permanently enjoined enforcement of Rule 8.4(g) in its entirety. Defendants timely appealed.

## II.

The District Court had original jurisdiction under 28 U.S.C. §§ 1331 and 1343(a). We have appellate jurisdiction under 28 U.S.C. § 1291. We review the District Court's summary judgment decisions de novo. *Sikkelee v. Precision Airmotive Corp.*, 907 F.3d 701, 708 (3d Cir. 2018). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

To have standing to sue, Greenberg must establish he suffers an actual or imminent injury that is fairly traceable to Rule 8.4(g).[4] He cannot. His planned speech does not arguably

---

[4] The amendment to Rule 8.4(g) raises an issue of standing and not mootness because Greenberg replaced his initial complaint with a subsequent pleading challenging the new Rule. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74

violate the Rule, and he faces no credible threat of enforcement. Thus, it is not objectively reasonable for Greenberg to alter his speech in response to the Rule. His arguments to the contrary are largely based on his perception of the social climate, which he sees as infested by "[w]idespread illiberal impulses for 'safetyism.'" Greenberg Br. 45 (quoting Greg Lukianoff & Jonathan Haidt, *The Coddling of the American Mind* 268–69 (2018)). But such impulses do not supply Greenberg with a concrete injury fairly traceable to the challenged Rule. A likelihood of offending audience members is not a likelihood of disciplinary investigation or enforcement under Rule 8.4(g).

Article III of the Constitution limits the jurisdiction of the federal courts to actual cases or controversies. U.S. Const., art. III, § 2, cl. 1. "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (internal quotation marks omitted). Standing is a "jurisdictional requirement" that "remains open to review at all stages of the litigation." *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994). At summary judgment, a

---

(2007) ("[W]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction."); *Persinger v. Sw. Credit Sys. L.P.*, 20 F.4th 1184, 1190 (7th Cir. 2021) ("When reviewing potential injuries for standing purposes, we are constrained by the operative complaint."); *GAF Bldg. Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479, 483 (Fed. Cir. 1996) (recognizing that the proper focus in determining jurisdiction is on "the facts existing at the time the complaint under consideration was filed").

plaintiff "can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts" establishing standing. *Clapper*, 568 U.S. at 412 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks omitted)). To establish standing, a plaintiff must show an injury in fact fairly traceable to the challenged action that a favorable ruling may redress. *Id.* at 409.

The injury-in-fact requirement ensures the plaintiff has a "personal stake in the outcome of the controversy." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). An injury in fact must be "concrete and particularized," not "conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted). A plaintiff may challenge the constitutionality of a regulation before suffering an "actual" injury arising from enforcement so long as the threatened injury is "imminent." *Id.* Such a plaintiff satisfies the injury-in-fact requirement where he alleges he intends to do something arguably protected by the Constitution, but arguably barred by the regulation, and that he faces a credible threat of prosecution under the regulation. *Schrader v. Dist. Att'y of York Cnty.*, 74 F.4th 120, 124–25 (3d Cir. 2023) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014)).

We determine Greenberg lacks standing to maintain this pre-enforcement challenge of Rule 8.4(g). He fails to establish an imminent future injury because his planned course of conduct is not arguably proscribed by Rule 8.4(g) and he faces no credible threat of prosecution for engaging in such conduct. To the extent that he asserts standing based on an ongoing chill to his speech, he cannot show that this chill is objectively reasonable or fairly traceable to the challenged Rule.

## A.

Rule 8.4(g) does not arguably prohibit anything Greenberg plans to do. The Rule covers only knowing or intentional harassment or discrimination against a person. Nothing in Greenberg's planned speeches comes close to meeting this standard.

We must construe the Rule to determine what it arguably proscribes. We start, as a Pennsylvania court would, by examining its plain language in context. *See Marcellus Shale Coalition v. Dep't of Envt'l Prot.*, 292 A.3d 921, 937, 943 (Pa. 2023). Rule 8.4(g) provides it is professional misconduct to "knowingly engage in conduct constituting harassment or discrimination." Pa. R. Pro. Conduct 8.4(g). Thus, it is essential to understand the meanings of "harassment" and "discrimination" as well as the Rule's knowledge requirement.

Conduct constitutes harassment or discrimination only when targeted at a person. The Rule's commentary defines "harassment" as "conduct that is intended to intimidate, denigrate or show hostility or aversion toward a person." Pa. R. Pro. Conduct 8.4(g) cmt. 4. The ordinary meaning of "harassment" similarly encompasses only conduct "directed at a specific person" that "annoys, alarms, or causes substantial emotional distress to that person and serves no legitimate purpose." *Harassment*, *Black's Law Dictionary* (11th ed. 2019). The Rule's commentary also limits "discrimination"— ordinarily defined as "differential treatment," *Discrimination*, *Black's Law Dictionary* (11th ed. 2019)—to conduct that "treat[s] a person as inferior," or "disregard[s] individual characteristics." Pa. R. Pro. Conduct 8.4(g) cmt. 5.

Rule 8.4(g) is limited in another way—it prohibits only harassment and discrimination that is knowing or intentional. Under the Rule, it is professional misconduct to "knowingly engage" in harassment or discrimination. Pa. R. Pro. Conduct 8.4(g). A lawyer violates this rule when he actually knows his conduct is harassing or discriminatory, or when he is practically certain that it will cause harassment or discrimination. Pa. R. Pro. Conduct 1.0(f) ("'Knowingly' . . . denotes actual knowledge of the fact in question."); *see* 18 Pa. Cons. Stat. § 302(b)(2) (in criminal context, a person acts "knowingly" when "he is aware that his conduct is of that nature," or when he is "practically certain that his conduct will cause such a result"); *Knowingly*, *Black's Law Dictionary* (11th ed. 2019) (defining acting "knowingly" as acting "deliberately" or "with the knowledge that the social harm that the law was designed to prevent was practically certain to result"). The commentary's definition of "discrimination" includes only "conduct that a lawyer knows manifests an intention" to treat a person as inferior based on a protected characteristic. Pa. R. Pro. Conduct 8.4(g) cmt. 5. And its definition of "harassment" is further limited to intentional conduct. *See id.* cmt. 4 (defining "harassment" as "conduct that is intended to intimidate, denigrate or show hostility or aversion").

The Rule does not arguably bar Greenberg's planned speech. Greenberg intends to discuss legal doctrine at CLE seminars where he will advocate "controversial legal positions" and "verbalize epithets" discussed in judicial opinions. Greenberg Br. 44. The presentations will "oppose[] hate speech bans," "advocat[e] for the right of people to express intolerant religious views," and "support[] Due

Process protections for students accused of sexual misconduct." JA160–61. This speech does not arguably violate the Rule. None of Greenberg's planned speech could be interpreted as knowing harassment or discrimination directed at a person. Greenberg plans to verbalize epithets found in judicial opinions within an academic discussion, not direct them at an audience member. Greenberg's general advocacy of potentially controversial positions does not denigrate any person or treat any person as inferior based on a protected characteristic. And the Rule reaches only lawyers who are practically certain their speech will cause harassment or discrimination, not those who inadvertently offend their audience.

This interpretation is buttressed by the interpretation of the Disciplinary Board and Office of Disciplinary Counsel. The Disciplinary Board recommended the use of the word "knowingly" because it "prevents unintentional violation of the [R]ule, and serves to exclude inadvertent or negligent conduct." 49 Pa. Bull. 4941 (Aug. 31, 2019). The Office of Disciplinary Counsel interprets the Rule as "encompassing only conduct which targets individuals by harassing or discriminating against an identifiable person." JA276 ¶ 7. It does not "prohibit[] general discussion of case law or 'controversial' positions or ideas." *Id.* The Chief Disciplinary Counsel further reviewed Greenberg's planned presentations, speeches, and writings and stated they do not violate the Rule.[5]

---

[5] Greenberg argues Farrell's interpretation of Rule 8.4(g) is not binding on the Office of Disciplinary Counsel, and the Disciplinary Board may later remove Farrell to change the Office of Disciplinary Counsel's interpretation of the Rule.

This makes sense—Greenberg's planned presentations do not knowingly or intentionally harass or discriminate against a person. Because the Rule does not arguably prohibit his planned speech, Greenberg fails to establish an injury in fact.

B.

Greenberg also fails to establish he faces a credible threat of prosecution for his planned speech because there is compelling contrary evidence that no threat exists. Defendants disavow enforcement for any of Greenberg's planned conduct. Courts often determine there is a credible threat of prosecution where the government refuses to make such a representation. *See, e.g.*, *Driehaus*, 573 U.S. at 165 ("[R]espondents have not disavowed enforcement if petitioners make similar statements in the future . . . ."); *Holder v. Humanitarian L. Proj.*, 561 U.S. 1, 16 (2010) ("The Government has not argued to this Court that plaintiffs will not be prosecuted . . . ."); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979) ("[T]he State has not disavowed any intention of invoking the criminal penalty provision . . . ."). On the other hand, a disavowal—like the one here—weighs against a credible threat of prosecution. *See Nat'l Shooting Sports Found. v. Att'y Gen. of N.J.*, --- F.4th ----, No. 23-1214, 2023 WL 5286171, at *4 (3d Cir. Aug. 17, 2023) (no standing where the attorney general disavowed prosecuting "participati[on] in 'lawful commerce,' which is all the [plaintiff] has said it wants to do"); *Abbott v. Pastides*, 900 F.3d 160, 177 (4th Cir. 2018) (no standing where plaintiffs

---

"But it is up to [Greenberg] to show some objective reason to believe [Defendants] would change [their] position, and this [he has] not done." *Abbott v. Pastides*, 900 F.3d 160, 177 (4th Cir. 2018).

received "written notice that neither investigation nor sanction was forthcoming"); *Wilson v. State Bar of Ga.*, 132 F.3d 1422, 1428–29 (11th Cir. 1998) (no standing where state bar had "repeatedly and consistently taken the position" that rule did not bar planned conduct).

Because the relevant standing inquiry ultimately focuses on the actual probability of an enforcement action, we note that Greenberg offers only one instance of an attorney facing formal discipline for purportedly discriminatory speech.[6] There, a South Carolina attorney was disciplined for posting, the week after the death of George Floyd, that Floyd was a "shitstain[]." *In re Traywick*, 860 S.E.2d 358, 359 (S.C. 2021). The attorney also directed profane remarks to women and "college educated, liberal suburbanites." *Id.* But the speech in *Traywick* is not remotely comparable to Greenberg's planned speech discussing First Amendment jurisprudence. Also, the attorney was not disciplined under a rule analogous to Rule 8.4(g), but for "conduct tending to bring the . . . legal system into disrepute" and for violating his oath to "maintain the dignity of the legal system." *Id.* at 485 (citing S.C. App. Ct. R. 402). When *Traywick*'s lone enforcement is viewed in light of the many state bar enactments paralleling Pennsylvania's Rule 8.4(g), "a history of past enforcement" is conspicuously lacking. *Driehaus*, 573 U.S. at 164; *see Blum v. Holder*, 744 F.3d 790, 798 (1st Cir. 2014) ("In assessing the risk of

---

[6] Greenberg also relies upon a judicial misconduct complaint and investigation involving controversial speech. This judicial misconduct proceeding—which turned on a question of proof and was ultimately dismissed—does not give rise to a credible threat of attorney discipline against him. *See In re Charges of Judicial Misconduct*, 769 F.3d 762, 775 (D.C. Cir. 2014).

25

prosecution as to particular facts, weight must be given to the lack of a history of enforcement of the challenged statute to like facts . . . ."); *cf. Abbott*, 900 F.3d at 176 ("The most obvious way to demonstrate a credible threat of enforcement in the future, of course, is an enforcement action in the past."); *Schrader*, 74 F.4th at 125. Although not dispositive on a pre-enforcement challenge, *see Speech First, Inc. v. Fenves*, 979 F.3d 319, 336 (5th Cir. 2020), the lack of any relevant prior enforcement combined with Defendants' disavowal of enforcement undercuts the threat of prosecution. *Nat'l Shooting Sports Found.*, 2023 WL 5286171, at *4.

Last, we observe that because the Office of Disciplinary Counsel weeds out meritless complaints on its own, Greenberg faces only a speculative risk of discipline. Based on only a single instance of an audience member considering his speech offensive at one of his CLE presentations, Greenberg speculates that his CLE attendees will inevitably file a disciplinary complaint against him, which might lead Defendants to "misconstrue" his conduct as violating the Rule—despite their assurance it does not—and pursue discipline against him. Greenberg Br. 44.

This "highly attenuated chain of possibilities" cannot support standing. *Clapper*, 568 U.S. at 401. The relevant analysis focuses on those responsible for enforcement, not those who make groundless complaints. Greenberg's audience members may find his speech offensive and may file disciplinary complaints. But there is little chance such complaints will result in an enforcement action. Pennsylvania's attorney-discipline process does not proceed directly from complaint to enforcement. *Cf. Driehaus*, 573 U.S. at 164 (recognizing standing where complaints

26

automatically triggered an expedited hearing, and the commission had no system for weeding out frivolous complaints). The Office of Disciplinary Counsel routinely dismisses complaints without a response from the attorney and has multiple layers of review before pursuing discipline. As discussed, Greenberg cannot show any persuasive history of past enforcement in Pennsylvania or any other jurisdiction, and Defendants interpret Greenberg's planned conduct as not barred by the Rule. Thus, it is speculative that a disciplinary complaint arising from his planned conduct would progress to the point of a formal response from him, much less disciplinary enforcement.

Greenberg relies on the Fifth Circuit's decision in *Speech First, Inc. v. Fenves*, 979 F.3d at 337, which found pre-enforcement standing where officials only disavowed "any future intention to enforce the policies contrary to the First Amendment" but impliedly planned to enforce them to the constitutional limit. Unlike *Fenves*, where the bounds of regulated speech were unclear, Defendants have informed Greenberg his planned speech is not barred. The Chief Disciplinary Counsel confirms Greenberg's planned speech does not violate the Rule and disavows any enforcement for his planned speech. Given this compelling contrary evidence, Greenberg cannot establish a credible threat of prosecution.

C.

Finally, Greenberg asserts he suffers an ongoing, actual injury in fact because the specter of disciplinary proceedings causes him to alter his presentations. Chilled speech or self-censorship is "a harm that can be realized even without an actual prosecution." *Virginia v. Am. Booksellers Ass'n, Inc.*,

484 U.S. 383, 393 (1988). But a plaintiff "cannot manufacture standing merely by inflicting harm on [himself] based on [his] fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416. A plaintiff cannot establish an injury merely through allegations of a "subjective chill." *Id.* at 418 (quoting *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972) (internal quotation marks omitted)). Rather, a plaintiff's self-censorship confers standing only where it is objectively reasonable and fairly traceable to the challenged regulation. *See id.*; *Wilson*, 132 F.3d at 1428–29.

Greenberg's speech is not reasonably chilled by Rule 8.4(g) because he faces no credible risk that the Rule will be enforced against him. Without a credible threat of enforcement, "a putative plaintiff can establish neither a realistic threat of legal sanction if he engages in the speech in question, nor an objectively good reason for refraining from speaking and 'self-censoring' instead." *Abbott*, 900 F.3d at 176. This analysis is similar to that in *Wilson*, where the state bar interpreted the challenged rule as having "no application to the types of scenarios the [plaintiffs] have posed" and informed individuals, upon their request, "about whether it will sanction them for engaging in certain practices." 132 F.3d at 1428–29. Just as in *Wilson*, Greenberg fails to establish an injury in fact because he has an assurance he will not face discipline under Rule 8.4(g).

Even without enforcement, Greenberg argues the possibility of a disciplinary investigation is enough to chill his speech. We may assume, without deciding, that "there are some forms of 'pre-enforcement' investigation that are so onerous that they become the functional equivalent of 'enforcement' for standing purposes." *Abbott*, 900 F.3d at 178;

28

*see also Driehaus*, 573 U.S. at 165–66 ("[A]dministrative action, like arrest or prosecution, may give rise to harm sufficient to justify pre-enforcement review."). For example, the Fourth Circuit reasoned that an administrative inquiry could reasonably chill speech if the "process itself imposes some significant burden, independent of any ultimate sanction." *Abbott*, 900 F.3d at 179 (citing *Driehaus*, 573 U.S. at 165–66). But just as in *Abbott*, the record shows that any burden from a speculative disciplinary investigation is insufficient to chill Greenberg's speech. As discussed, the Office of Disciplinary Counsel would determine any disciplinary complaint arising from Greenberg's planned speech to be frivolous, allowing the complaint to be dismissed without even a response from him. Thus, any subjective chill arising from a fear of lengthy or burdensome disciplinary proceedings is not objectively reasonable. *See id.* ("[B]ecause the plaintiffs can point to no reason to think they will be subjected to some different and more onerous process not yet experienced or threatened, their claim to injury . . . is purely speculative and thus insufficient to establish standing."). And because investigations into attorney discipline are confidential until the Board pursues discipline, there is little risk of adverse publicity associated with a disciplinary investigation.

Greenberg alleges his speech will be chilled. But his allegation is largely informed by his perception of the social climate, not Rule 8.4(g). Even if Greenberg feels uncomfortable speaking freely and fears professional liability, such chill must be fairly traceable to Rule 8.4(g). He cites studies on public attitudes toward protections for offensive speech; law professors facing informal complaints and, at times, academic sanctions based on their speech; and "dozens" of nonattorneys who "lost their jobs or suffered other negative

29

repercussions for words or conduct perceived to manifest racial bias or prejudice." JA221 ¶ 64. But those situations do not give rise to a reasonable fear of attorney discipline against him. Those individuals suffered consequences outside the attorney discipline process. Greenberg may choose to alter his CLE presentations in concern for his "professional reputation, available job opportunities, and speaking opportunities," JA216 ¶ 36, but such censorship cannot be fairly traced to discipline under Rule 8.4(g). Considering Greenberg faces no imminent injury from disciplinary proceedings under Rule 8.4(g), his self-censorship based on Rule 8.4(g) is not objectively reasonable. Any reasonable chill he suffers cannot be fairly traced to Rule 8.4(g). Thus, he lacks standing to maintain this suit.

We note that our determination that Greenberg has not shown a credible threat that Rule 8.4(g) will be enforced against him necessarily depends on our assessment of the present situation. The Rule was enacted only recently, and Defendants have not begun enforcing it, so there has been no opportunity to observe its effects. If facts develop that validate Greenberg's fears of enforcement, then he may bring a new suit to vindicate his constitutional rights. Our decision, as always, is limited to the record before us, and we express no opinion on the merits of his suit.

IV.

For these reasons, we will reverse the District Court's summary judgment orders. The District Court shall dismiss the case for lack of standing.

30

**AMBRO, J.**, concurring

      The majority opinion I join in full. I write separately only to note that someday an attorney with standing will challenge Pennsylvania Rule of Professional Responsibility 8.4(g). When that day comes, the existing Rule and its commentary may be marching uphill needlessly. We cannot advise on whether it will pass constitutional muster. But if the Bar's actions during the pendency of this litigation are any indication, it has a card to play. It can amend the Rule preemptively to eliminate many of the constitutional infirmities alleged by Greenberg in this case. In doing so, it might look to Maine, New Hampshire, New York, and Connecticut for guidance. *See* Me. R.P.C. 8.4(g) (2019); N.H. R.P.C. 8.4(g) (2019); N.Y. R.P.C. 8.4(g) (2022); Conn. R.P.C. 8.4(7) (2022).

      Those states' analogous enactments implement a comparatively robust safeguarding of attorneys' First Amendment rights. They direct regulatory reach away from the constitutionally protected speech Greenberg and his *amici* wish to espouse and narrowly steer it toward the overt and insidious evils that the Pennsylvania Bar and its *amici* wish to eradicate. Doubtless Pennsylvania is striving to do the same. But if it thinks it can do better, it need not start from scratch.

1